IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**GERALD DEAN CLOSE,**

        **Plaintiff,**

**v.**                                                    **Civil Action No. 3:09CV526**

**SLOOP NANCY LLOYD, et al.,**

        **Defendants.**

## MEMORANDUM OPINION

This matter is before the Court, upon trial by the Court without a jury, with the consent of the parties, on the Complaint of the Plaintiff, Gerald Dean Close ("Plaintiff"); the Counterclaim of the Defendant, the Sloop Nancy Lloyd, by its titled owner, Lori Anne Close Groat (formerly Lori Anne Close); and the asserted maritime lien of the Intervenor, The Islander LLC ("Intervenor"). For the reasons set forth herein, it is the finding of the Court that Plaintiff's claims as set forth in Counts I, II, and IV of the Complaint are DENIED, and that the claim asserting a maritime lien as set forth in Count III of the Complaint is GRANTED IN PART and DENIED IN PART. It is the further finding of the Court that where Plaintiff's claim(s) for ownership and possession of the subject vessel are DENIED, that said right of ownership and possession remains and/or reverts, by operation of law, to the titled owner, Lori Anne Close Groat, but that her counterclaim for monetary damages for alleged conversion of the subject vessel by Plaintiff as set forth in Count I of the Counterclaim is DENIED, as is her claim for a maritime lien as set forth in Count II of the Counterclaim. It is the further finding of the Court that the Intervenor's claim for satisfaction of its maritime lien is DENIED.

## Nature of the Action

This is a suit in admiralty against the Sloop Nancy Lloyd ("vessel" or "Nancy Lloyd") in which Plaintiff asserts that his daughter, Lori Anne Close Groat ("Groat"), wrongfully converted the subject vessel to her own use and possession and that he is entitled to ownership and possession as the result of a gift of the vessel to Groat that was subject to various conditions that she did not fulfill, as well as monetary damages in satisfaction of a maritime lien for parts and supplies he purchased for the vessel and labor he expended in its restoration and maintenance. The Defendant Groat asserts that Plaintiff is not the rightful owner; rather, she is as the result of an unconditional gift of the vessel to her by Plaintiff, and that she is entitled to monetary damages for the vessel's estimated value and for parts and services she provided or rendered and labor she expended in regard to the vessel. Finally, the Intervenor seeks monetary damages for the marina slippage fees incurred for the time that the vessel was docked and/or stored at the Intervenor's boatyard.

## Issues Presented

The Court finds that the resolution of the following issues are dispositive of all claims presented:

1. Whether ownership of the vessel vests in Groat as the result of an unconditional gift of the vessel to her by Plaintiff;

2. Whether, if the gift of the vessel was conditional, Groat failed to fulfill the subject conditions such that ownership of the vessel vests in Plaintiff;

3. Whether Plaintiff asserts a valid maritime lien, and in what amount, for parts and labor he provided for the improvement and maintenance of the vessel;

4. Whether Groat is entitled to assert a maritime lien for parts and services she provided or rendered in regard to the vessel;

5. Whether Groat is entitled to any damages for Plaintiff's alleged wrongful conversion of the vessel; and

6. Whether the Intervenor is entitled to assert a valid maritime lien in the amount of the slippage and storage fees for the vessel as claimed.

**Factual Findings**

The Court finds the following facts were established by the preponderance of the evidence presented at trial:

1. Defendant Groat owns River Refinishing & Restoration, a business specializing in vintage yacht restoration and upkeep.

2. While working on the restoration of M/Y SOCKS, a boat owned by a third party client, Groat became aware of the vessel, the Sloop Nancy Lloyd, a recreational vessel that was in storage, on land, at the same boatyard where Groat was working on the M/Y SOCKS.

3. Groat alerted her father, Plaintiff, about the Nancy Lloyd, expressing her interest in the vessel as a unique item.

4. Plaintiff then inquired about the availability for sale of the vessel from its then owner, Mr. Olivier Huin ("Huin"), and Plaintiff agreed to purchase it with the stated intention, to Huin, that he, Plaintiff, wished to purchase the vessel for his daughter, Groat.

5. Plaintiff expressed similar intentions as to his purpose in acquiring the vessel to

an associate, Steve Reynolds ("Reynolds").

6. Plaintiff instructed the seller of the vessel, Huin, to issue the Bill of Sale and title documentation of the vessel in the name of Groat as titled owner and purchaser of the vessel.

7. Groat was unaware and not involved in the decision to title the vessel in her name, as indicated by the inadvertent misspelling of her first name on the certificate of title.

8. Plaintiff told Groat that the vessel was hers and that he wanted to gift it to her because he intended to give his son, Jimmy Dean Close, Groat's brother, other property, as he subsequently did.

9. Plaintiff never took direct possession of the vessel upon sale; instead, possession was delivered from Huin to Groat by assignment of the documents at sale.

10. While Groat assumed that Plaintiff wished to share enjoyment and use of the vessel once it was made seaworthy, there was no express verbal or written agreement between Plaintiff and Groat for Plaintiff to do so.

11. Plaintiff and Groat both worked on the vessel from February to April 2002 in order to make it seaworthy.

12. Plaintiff used the vessel on several occasions, and ultimately prevented Groat's use and enjoyment of the vessel as their personal relationship deteriorated over time.

13. The vessel was docked at the Intervenor's boatyard for several years with the Intervenor believing, for at least a majority of that time, that Plaintiff was the

owner of the vessel.

14. The Intervenor and Plaintiff had an informal agreement whereby the slippage and storage fees for the vessel at the Intervenor's boatyard would be satisfied by Plaintiff's labor at the Intervenor's boatyard and additional cash payments by Plaintiff.

15. The arrangement continued for several years without the Intervenor seeking to demand or collect on any arrearage for the slippage/storage fees that are now claimed to have accumulated over time.

16. At some point after learning that Groat was the titled owner, the Intervenor sought to charge for past slippage/storage fees based on an ad hoc and arbitrary assessment of value.

17. Upon learning of the demand, and given the prolonged period of denied use of the vessel and conflict with Plaintiff, Groat caused the vessel to be removed from the Intervenor's boatyard so as, in part, to cease additional fee demands by the Intervenor.

18. The vessel is presently stored at a different marina from the one to which Groat took it upon removing it from Intervenor's boatyard, and it is currently impounded under the authority of the Court pending the resolution of this litigation.

19. While Plaintiff asserts a maritime lien for labor and materials provided for the restoration and maintenance of the vessel over time, including annual painting and preservation, the calculation of labor is speculative and unreliable at best, as

is reflected in Def.'s Ex. 18 that belies the assertion that Plaintiff maintained the vessel as he said he had done on an annual basis.

20. The only sufficiently reliable measure of the maritime lien asserted by the Plaintiff are the specific third party paid invoices generated for materials and services rendered and introduced as trial exhibits by the Plaintiff, namely:

    a.    New Volvo Diesel Engine – $8422.17 (Pl.'s Ex. 7);[1]

    b.    Full enclosure, frame and curtains – $4200 (Pl.'s Ex. 9);

    c.    Refinish mast – $3900 (Pl.'s Ex. 10);[2]

    d.    Cushions – $1300 (Pl.'s Ex. 11);

    e.    Repairs to Paragon – $1312.50 (Pl.'s Ex. 12);[3]

    f.    Anchors – $428.72 (Pl.'s Ex. 13); and

---

[1] While an argument could be made that the engine that was installed with the restoration/refurbishing of the vessel in the 2002 time frame has deteriorated over the past several years while the Plaintiff had primary access to, and use of, the vessel such that he should not be entitled to recoup the expense involved as part of his lien, there is no evidence before the court to confirm the degree of deterioration or the resulting decrease in value of the engine. Therefore, the Court is compelled to award the full amount that inured to the benefit of its then, and present, owner, Groat.

[2] While the argument can be made that where Groat was responsible for refinishing the mast during the restoration of the vessel, and the Plaintiff had primary access to, if not exclusive use of the vessel until he performed the same task in 2008, such that his lien for such labor and materials should be considered satisfied in full, such efforts, both originally and subsequently, were to the benefit of the owner, Groat, who acquiesced, at least to some extent, in the Plaintiff's domination over use of the vessel and for whom the benefit of the recent procedure will continue into the future.

[3] The charge refers to the replacement of the engine's clutch that the evidence at trial established occurred as the vessel was being moved during bad weather. While the item failed and had to be replaced during the time the Plaintiff was the primary user, the repair benefitted the then, and present owner, and such typical repairs are to be expected and are not challenged as unreasonable in amount or necessity.

  g.  Anchor Rope – $174.36 (Pl.'s Ex. 14).

21. Plaintiff's documented expenses relating to the vessel as enumerated in the preceding paragraph total $19,737.75.

**Analysis**

**1. Groat owns the vessel, as the result of an unconditional gift of the vessel to her by Plaintiff.**

  Although a federal court in an admiralty case, as here, must apply federal law where applicable, when a matter involves a state issue, the federal court must refer to state law when no federal law addresses the issue. See Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 320-21 (1955), Greenly v. Mariner Mgmt. Group, Inc., 192 F.3d 22, 25-26 (1st Cir. 1999). Because the core issue presented in this case concerns the nature of the gift of the vessel by Plaintiff to Groat, and the law as to such matters is a creature of state law, the law of Virginia applies as the alleged gift was made in Virginia.

  Virginia law provides that where the purchase money is paid by a parent and a deed is made to a child, there is a rebuttable presumption that it was intended as an advancement, and a trust will not result upon only the payment of the purchase money. Clary v. Spain, 119 Va. 58, S.E. 130, 131 (1916), Young v. Holland, 117 Va. 433, 84 S.E. 637, 638 (1915). In order for the gift to be valid, there must be under Virginia law: (1) a present intention on the part of the donor to make the gift; (2) a delivery, either actual or constructive; and (3) such delivery must divest the donor of all dominion and control over the property and place it in the donee. In re Garrett, 45 B.R. 190, 192 (Va. Bkrtcy. 1984) (citing Taylor v. Smith, 199 Va. 871, 102 S.E.2d 160 (1958)). Constructive delivery can mean delivery of the keys to a vehicle, or the titling of the vehicle in the donee's name. Garrett, 45 B.R. at 193. The party claiming a constructive trust

must present clear and convincing evidence to create a constructive trust on the subject property. Mongold v. Woods, 278 Va. 196, 202, 677 S.E.2d 288, 291 (2009).

Here, the evidence presented establishes by a preponderance that the vessel was an unconditional gift from Plaintiff to Groat, and not a conditional gift intended as an inheritance as asserted by Plaintiff. The vessel is not subject to a constructive trust for Groat, as Plaintiff has not presented clear and convincing evidence that such a trust was intended. Plaintiff has otherwise failed to rebut the presumption that the property that was titled in Groat's name, as his child, but purchased by him, was other than a gift to her. In support of the Court's finding, the Court concludes that the following was established by a preponderance of the evidence at trial.

While working on another boat, the M/Y SOCKS, for a client, Groat noticed the vessel being stored in the same boatyard and informed Plaintiff about it, because she thought it was "cool," and because she had a passion for vintage yachts and sailboats that were also a source of her business endeavors. Not long thereafter, Groat and Plaintiff examined the vessel, whereupon Plaintiff stated that he had bought the vessel for Groat, and that they would "fix it up and enjoy it." Later that same day, Huin, the seller, approached Groat with the required paperwork for sale, with her name, inadvertently misspelled, on the paperwork. Groat assumed that she and Plaintiff would restore the vessel together, and have equal access, enjoyment, and use of the vessel. However, the subject was never specifically discussed, and it was simply Groat's assumption that such would occur. Groat further testified that Plaintiff bought the vessel for her because he told her that he was giving his former commercial fishing work boat and home property to his son, Groat's brother, Jimmy Dean Close ("Close"), and the latter's wife. Groat further testified at trial that Plaintiff never stated that there were any conditions she needed to

satisfy in order to retain the boat.

Groat also testified that a disagreement between she and Plaintiff began in 2004 or 2005, and that Plaintiff became increasingly adamant that she transfer the paperwork to the vessel to him. Groat stated that her intention to allow equal use and enjoyment of the vessel by Plaintiff never ceased at first as far as she was concerned, but that the situation changed when Plaintiff hindered and ultimately prohibited her access to, and use of, the vessel, even though Plaintiff continued to use the vessel himself. In that latter regard, Preston Jenkins ("Jenkins"), owner of the boatyard where the vessel was docked, testified that Plaintiff used the vessel on a regular basis, and noted that Plaintiff's son, Close, would tow the vessel from its slip when the vessel's engine was not working so that Plaintiff could use the vessel under sail in open water. After a particular confrontation between Groat and Plaintiff in 2005, when Groat had refused to sign the vessel over to Plaintiff, Groat stated that their personal relationship deteriorated to a point where she did not even attempt to use the vessel thereafter, and that she only went to the marina periodically where it was stored or docked to check on its condition.

Moreover, Mr. Steve Reynolds ("Reynolds") testified that he worked on the vessel with Plaintiff, and that Plaintiff told him in no uncertain terms that the vessel had been a gift by him to Groat. Reynolds further stated at trial that Plaintiff added that he had asked Groat if she wanted a sailboat, to which she replied in the affirmative, and that Plaintiff therefore bought the vessel for Groat in part because Plaintiff also said that he was going to gift his work boat to his son, Close.

Huin also stated in sworn deposition testimony introduced at trial that Plaintiff expressed an interest to him in purchasing the vessel for Groat. Huin added that Plaintiff further instructed

him to list Groat as the purchaser of the vessel on the Bill of Sale, and to also name Groat on the related title documentation. Indeed, Huin stated that he listed Groat on the title documentation of the vessel only on the demand of Plaintiff. Also, Huin stated that he was the one who inadvertently misspelled Groat's name on such documentation, writing "Lory" instead of Groat's proper name, "Lori," so as to confirm that Groat had nothing to do with preparing the sale documentation. Huin further stated that he understood that Plaintiff was "completely fine" with what had happened in regard to the transfer of the vessel, and that Plaintiff never asked Huin to reassign the title; nor did he express any interest to Huin in doing so while they were working on another boat together most every day for a period of time thereafter.

Plaintiff testified that he knew the vessel was titled in Groat's name before the vessel was even seaworthy. However, Plaintiff did not make any attempt to reassign title at that point; nor did he complain to Huin, who he still saw at the boatyard for another four to five weeks on a regular basis, that Huin had made a mistake in the sale documentation, though Plaintiff claims that the vessel was to be an inheritance, and not a gift. Plaintiff further testified at trial that he did not care that the vessel was titled in Groat's name; he only wanted Groat to sign the title over to him because Groat failed to keep the proper documentation on board the vessel so Plaintiff could use it. However, as noted earlier, Jenkins testified that Plaintiff used the vessel regularly in any event and that he saw Close tow the vessel out into open water so that Plaintiff could use it. Plaintiff also testified that he sailed the vessel with a friend on a specific trip into the Chesapeake Bay (Tangier Island) in 2008, apparently knowing that the proper documentation was not on board.

Close testified that he had no personal knowledge of the acquisition of the vessel. He

stated that his father's work boat was deeded over to him in 2004, that he "took over" the mortgage on Plaintiff's home around 2002, and that the home was deeded in both Plaintiff's and Close's names sometime in 2004. Plaintiff testified inconsistently, however, that he did not give his boat and home to Close, but that he sold both to him.

As noted earlier, for a gift to be valid, there must be a delivery that divests the donor of all dominion and control over the property and places it in the donee. Here, the evidence supports a delivery of the vessel to Groat, the donee, as of the point when she signed the vessel's documentation papers that listed her as the titled owner. Though Plaintiff alleged Groat caused the vessel to be titled in her name, the evidence at trial did not support his allegation. Rather, the evidence established that Plaintiff intended to give the vessel to Groat as a gift, and that he did so by instructing the previous owner to title the vessel and related documentation in Groat's name. Upon Groat's signature, delivery was complete, and such delivery gave Groat exclusive dominion and control over the vessel. Even though Groat, as donee, may have intended to allow Plaintiff equal use and enjoyment of the vessel, such an understanding was assumed and was not presented as a condition of the gift. Therefore, Groat owns the vessel as the result of an unconditional gift to her by Plaintiff, but Groat's claim for damages as a result of Plaintiff's actions prohibiting Groat's use of the vessel must also fail where such damages are too speculative, where Groat acquiesced at times in Plaintiff's exclusive use, and where Groat retains ownership in any event.

2. **The vessel was not a conditional gift to Groat from Plaintiff.**

For the reasons discussed, the Court finds that the vessel was not a conditional gift to Groat. The Court further finds that there was not a resulting trust, as Plaintiff has not presented

sufficient clear and convincing evidence to substantiate such a conclusion.

> **3. Plaintiff asserts a valid maritime lien for $19,737.75 for parts he provided for the improvement and maintenance of the vessel, but Plaintiff does not assert a valid maritime lien for his labor on the vessel.**

A person providing necessaries to a vessel on the order of the owner or a person authorized by the owner has a valid maritime lien on the vessel and may bring a civil action *in rem* to enforce the lien. 46 U.S.C. §31342. Plaintiff asserts that he provided a variety of parts and maintenance for the vessel. It is clear from the evidence that Plaintiff did perform work on the vessel. However, the evidence as to the nature, extent, and value of such services is too speculative and unreliable to support an award. An example of such speculative claims for Plaintiff's labor costs is that Plaintiff insisted that he removed the vessel from the water ("hauled it") each year to repaint its bottom, and that he purchased the paint and materials to do so. However, there are no sufficiently reliable exhibits supporting the allegation, and contrary to such allegation, it readily appears from the photographs of the vessel submitted by Groat at trial that the vessel was not maintained as alleged. (Def.'s Ex. 18.)

Plaintiff has, however, presented paid invoices for certain parts and maintenance for the vessel, such as a new engine, seat cushions, refinishing the mast, repairs to the paragon, anchors and rope, and a full enclosure, frame, and curtains. (Pl.'s Ex. 7, 9-14.) Though Groat alleged that such purchases were subsequent gifts, her allegation is not sufficiently supported by the evidence of record either. Moreover, though Groat asserts that she should not have to pay for such parts and repairs because Plaintiff prevented her use of the vessel, Groat nevertheless benefitted from Plaintiff's actions, and, therefore, Plaintiff is entitled to assert a lien in the total amount of $19,737.75, which is the total of the paid expenses sufficiently substantiated by the

evidence.

4. **Groat is not entitled to assert a maritime lien for parts and services she provided or rendered in regard to the vessel.**

Because Groat owns the vessel, any repairs or maintenance she provided for the vessel were for her own benefit. Therefore, she is not entitled to any damages.

5. **Groat is not entitled to any damages for wrongful conversion of the vessel by Plaintiff**.

The Court finds that Groat has not sustained her burden of proof to either establish that she was denied use of the vessel (where there is contra veiling evidence that she merely acquiesced and did not take any affirmative action beyond protesting to Plaintiff), or the reasonable value for such denied use, if established, cannot be sufficiently established.

6. **Intervenor is not entitled to assert a valid maritime lien in the amount of the slippage and storage fees for the vessel.**

Jenkins testified at trial that he had no documented system for charging slippage/dockage fees. In fact, he stated that he did not even keep a running log of the vessel's slippage fees, but rather created the invoice for the vessel after it was removed from Intervenor's boatyard in 2009. Jenkins further testified that Plaintiff performed work at the boatyard and paid Jenkins some additional cash from time to time in exchange for the slippage fees for the vessel. Notably, Jenkins did not initiate any complaints about past due fees until he discovered that Groat, not Plaintiff, was the titled owner of the vessel. Furthermore, though Jenkins testified that he calculated the amount of past due fees by consulting his notes (apparently regarding work done by Plaintiff and cash paid to Jenkins by Plaintiff), no notes were introduced into evidence; nor do such notes represent anything more than an arbitrary assessment of slippage fees for the vessel.

More specifically, Jenkins testified that he did not have a flat rental rate for each slip, but that he would usually just agree on a fee with individual vessel owners based on such factors as the size of the slip, the boat use, and if there were available slips or not.  Jenkins also testified that he was not aware of how the rates compared to other rates in the area.  Furthermore, Charles Brooks, another patron at Intervenor's boatyard, testified that he does not pay slippage fees for two boats he owns and stores at the boatyard; instead, he performs work around the marina in exchange for such slippage fees, an arrangement consistent with the asserted understanding that existed between Plaintiff and Intervenor.

Jenkins also testified that he forwarded several letters to Groat concerning past due slippage fees once he discovered she was the owner, but there is no evidence to corroborate his testimony that he had done so, or that Groat had received them.  Jenkins also stated that he did nothing to enforce the past due fees; that he never demanded that Plaintiff pay any more money other than what he already paid, and, otherwise, that he never made any effort to collect any money from Plaintiff.  Groat testified that she saw Jenkins at local sporting events on a regular basis over time, and at the marina after the time Jenkins allegedly discovered she was the owner of the vessel, but that Jenkins never mentioned any issue regarding past due fees.  Groat further testified that on the evening she first attempted to remove the vessel from the Intervenor's boatyard, Jenkins confronted her and stated that he had been sending letters to an address where she no longer lived, but then he stated that he had just recently learned that Groat was the owner of the vessel.  Reynolds testified that Jenkins had told him that he had been sending Groat certified letters about past slippage fees over time, but that Jenkins later stated that he had just found out recently that Groat was the actual owner of the vessel.  Reynolds further testified that

Jenkins told him about the slip fees for the vessel, and that the arrangement was that Plaintiff would cut the grass around the boatyard for $600 in cash, but that Plaintiff would give the $600 back to Jenkins for the slip rental. Such evidence allows for the fair inference and conclusion that Jenkins decided to attempt to collect past slippage fees once he learned that Groat was the owner, but that the fees had already been waived or satisfied as the result of his past dealings with Plaintiff.

In summary, Intervenor alleges that it is owed over $10,000 in past due slippage fees. However, though Jenkins claims there was an arrearage of past due fees, the evidence establishes that the work performed around the boatyard by Plaintiff, combined with the additional cash he paid Jenkins, was done in exchange for the vessel's slippage fees, and that any charges were satisfied in full, each year. Jenkins never attempted to collect any money from Plaintiff, and he only initiated attempts to collect what he asserts to be past due fees once he discovered Groat was the titled owner. While it is unclear whether Jenkins learned Groat was the owner in 2006 or 2009; the fact that Jenkins did not create the invoice for past fees until after the vessel was removed from his boatyard in 2009 suggests that Jenkins only learned Groat was the titled owner then, and not in 2006. Regardless, the Intervenor's claim for fees prior to 2006 is unenforceable because of the applicable three year statute of limitations on oral contracts as governed by state law, as affirmatively plead on behalf of the vessel. Va. Code § 8.01-246 (Answr. to Intervening Compl. (Docket No. 29)). Moreover, the Intervenor's claim for fees from 2006-2009 is unsubstantiated, as the evidence demonstrates that the invoice was created in an arbitrary way, and testimony from separate witnesses supports the conclusion that Plaintiff and Jenkins had an agreement to exchange his labor and some cash that he refunded to Jenkins for the asserted fees.

Accordingly, the Court finds that the Intervenor has not asserted a valid maritime lien and no damages are to be awarded.

## Conclusion

The vessel was an unconditional gift to Groat by the Plaintiff where, among other considerations, Groat's version of events is corroborated by two independent witnesses, and Plaintiff's testimony lacks any such support. Groat's failure to maintain current documentation on the vessel as required by regulation does not constitute an unlawful conversion of the vessel in inhibiting its use by Plaintiff where Groat was the lawful owner of the vessel at the time and owed no duty to Plaintiff to do so. Groat's counterclaim against Plaintiff for his unlawful conversion of the vessel by his periodic use of it and his preclusion of Groat's use and enjoyment fails where she did not object to Plaintiff's use and enjoyment, or when she may have attempted to exercise her own use of the vessel, there is not sufficient evidence to support and quantify any award of damages for her precluded use. While Plaintiff can assert a valid maritime lien in the amount that he paid for parts and services related to the vessel as confirmed by documented invoices introduced at trial, his additional claims for payment for his labor and undocumented parts or services are too speculative and unreliable to sustain his burden of proof. At the same time, Groat is not entitled to any damages for the alleged value of her labor as she was, and remains, the owner of the vessel and such efforts must be viewed as having been expended, voluntarily, for her own benefit.

Finally, the Intervenor's maritime lien for the applicable time period of 2006-2009, that is not precluded by the applicable statute of limitations, must nevertheless be denied where Intervenor has not sustained its burden of proof with sufficiently reliable evidence of the

charges, including how they were assessed pursuant to enforceable contract, and where Intervenor took no action for a prolonged period of time to declare and enforce any claim so as to give sufficient support to the existence of an informal, but executed agreement between Plaintiff and Intervenor for satisfaction of the subject fees by the contribution of Plaintiff's labor at Intervenor's boatyard and payment of the partial fee in cash over time.

      A Final Order shall issue.

_____/s/_____
Dennis W. Dohnal
United States Magistrate Judge

Richmond, VA
Dated: March 26, 2010